1    **UNITED STATES DISTRICT COURT**
2    **MIDDLE DISTRICT OF FLORIDA**
3    (Tampa Division)
4
5
6    RICHARD HUNSTEIN,
7
8         Plaintiff,
9
10   vs.                                           Civil Action No. 8:19-cv-983-EAK-TGW
11
12   PREFERRED COLLECTION AND
13   MANAGEMENT SERVICES, INC., and
14   EQUIFAX INFORMATION SERVICES, LLC.
15
16        Defendants.                                    /
17
18        **MOTION TO DISMISS OF THE DEFENDANT PREFERRED**
19        **COLLECTION AND MANAGEMENT SERVICES, INC., PURSUANT**
20        **TO RULE 12(b)(1), (6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**
21
22        COMES NOW the Defendant, PREFERRED COLLECTION AND MANAGEMENT

23   SERVICES, INC., ("PCMS") by and through its undersigned counsel and pursuant to Rule

24   12(b)(1),(6) of the Federal Rules of Civil Procedure and files this its motion to dismiss the

25   complaint of the Plaintiff, RICHARD HUNSTEIN, ("Hunstein") and states as grounds as

26   follows:

27   1.    On April 24, 2019, Hunstein filed a two count complaint against PCMS,  (Doc. #1)

28         which was served on May 1, 2019.

29   2.    Count I of the complaint alleges that PCMS violated the Fair Debt Collection Practices

30         Act ("FDCPA") Title 15 U.S.C. §1692 et. seq. by disclosing information about the

31         consumer debt to unauthorized third party in connection with the collection of a debt.

32         Hunstein labeled the third party a "mail house." *See Complaint*, (Doc. #1) at ¶32.

-1-

1        Hunstein claims PCMS's use of a vendor to prepare and send its notification to a

2        consumer was in violation of 15 U.S.C. §1692c(b).  *Id.*

3    3.    Hunstein additionally claims that the use of a "mail vendor" is an unfair means of

4        attempting to collect a debt in violation of 15 U.S.C. §1692f, *see* *Complaint*, (Doc. #1) at

5        ¶33, for "the sole purpose of streamlining the generation of profits without regard to the

6        propriety and privacy of information which it discloses to such third-party."  *Id.* at ¶28.

7    4.    Count I seeks statutory damages, actual damages and attorneys' fees for the alleged

8        violations of the FDCPA.

9    5.    Count II of the Complaint alleges a violation of the Florida Consumer Collection

10       Practices Act ("FCCPA"), Florida Statutes section 559.551, et seq. (2017), based upon

11       the same action, i.e. transmitting information about a consumer debtor and the debt to a

12       "mail house" vendor to prepare a letter for PCMS to be sent to the debtor.  *See*

13       *Complaint*, (Doc. #1) at ¶38.

14    6.    Hunstein specifically references subsection 559.72(5), Florida Statutes.  That subsection

15       provides:

16       [i]n collecting consumer debts, no person shall: . . . (5) Disclose to a person other
17       than the debtor or her or his family information affecting the debtor's reputation,
18       whether or not for credit worthiness, with **knowledge or reason to know that the**
19       **other person does not have a legitimate business need for the information** or
20       that the information is false.
21
22    Fla. Stat. § 559.72(5) (2017)(emphasis added).

23    7.    Hunstein seeks statutory damages of $1,000 for the alleged violation of the FCCPA, plus

24       unspecified actual damages, injunctive relief and attorneys' fees.

25    8.    No other violations of the FCCPA are alleged by Hunstein.  Count II, the FCCPA claims

1   supplemental jurisdiction based upon the court having jurisdiction over the FDCPA

2   claim.  *See* *Complaint*, (Doc. #1) at ¶ 4.

3                          **Memorandum of Law**

4        PCMS asserts that based upon the allegations of the complaint, Hunstein fails to state a

5   claim for which relief may be granted as to Counts I and II of the complaint and because he has

6   not sufficiently alleged Article III Standing.

7        **I.  Standard of Review**

8        On a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rules of

9   Civil Procedure 12(b)(1) based upon a facial challenge[1] to a complaint, the plaintiff is left with

10  safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a

11  claim is raised. *See* *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244,

12  1251 (11th Cir. 2007).  In particular, the court must consider the allegations in the plaintiff's

13  complaint as true when a motion to dismiss for lack of subject matter jurisdiction is based upon a

14  facial attack of the complaint.  Similarly, a motion to dismiss based upon Rule 12(b)(6) of the

15  Federal Rules of Civil Procedure, for failure to state a claim upon which relief may be granted,

16  federal courts accept as true "all facts set forth in the plaintiff's complaint." *See* *Sealed Unit Parts*

17  *Co. v. Sycom Surge, Inc.*, *2019 U.S. Dist. LEXIS 54081, at \*4 (M.D. Fla. Mar. 29, 2019)*(quoting

18  *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 n.12 (11th Cir. 2005)).  In addition, the

19  court must construe the allegations in the light most favorable to the plaintiff. *See* *M. T. V. v.*

20  *Dekalb County Sch. Dist.*, 446 F.3d 1153, 1156 (11th Cir. 2006) (*citing* *Hill v. White*, 321 F.3d

21  1334, 1335 (11th Cir. 2003)); *Reese v. JPMorgan Chase & Co.*, 686 F. Supp. 2d 1291, 1298

---

[1]  as opposed to a factual challenge to subject matter jurisdiction.

1    (S.D. Fla. 2009).  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain

2    sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

3    *Ashcroft v. Iqbal*, 556 U. S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) *(quoting Bell*

4    *Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  If there

5    are "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to

6    support the claim, there are "plausible" grounds for recovery, and a motion to dismiss should be

7    denied. *Twombly*, 550 U. S. at 556.  A court considering a Rule 12(b)(6) motion is generally

8    limited to the facts contained in the complaint and attached exhibits, including documents

9    referred to in the complaint that are central to the claim. *Melford v. Kahane & Assocs.,* No.

10    18-cv-60881-BLOOM/Valle, 2018 U.S. Dist. LEXIS 178061, at *6 (S.D. Fla. Oct. 15,

11    2018)(*citing Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009)).

12    **A.  Count I, the FDCPA claim**

13        The FDCPA was passed in 1977 in order protect consumers from unfair debt collection

14    practices. *Acosta v. Campbell*, 309 F. App'x 315, 320 (11th Cir. 2009). A debt collector may not

15    engage in any conduct the natural consequence of which is to harass, oppress, or abuse any

16    person in connection with the collection of a debt.  15 U.S.C. § 1692d.  Additionally, the House

17    Report on the FDCPA states: "a debt collector may not contact third persons such as a

18    consumer's friends, neighbors, relatives, or employer. Such contacts are not legitimate collection

19    practices and result in serious invasions of privacy, as well as the loss of jobs." S.Rep. No.

20    95-382, reprinted at 1977 U.S. Code Cong. & Admin. News 1695, 1699.   A plaintiff asserting an

21    FDCPA claim must plausibly allege: (1) the defendant is a debt collector; (2) the challenged

22    conduct is related to debt collection; and (3) the defendant has engaged in an act or omission

1    prohibited by the FDCPA.  *Howard v. Client Servs.*, No. 0:17-cv-62425-UU, 2018 U.S. Dist.

2    LEXIS 142827, at *5 (S.D. Fla. Aug. 20, 2018).

3         **1.  The well pleaded facts establish that PCMS is a debt collector.**

4         The FDCPA defines a "debt collector" as any person who uses any instrumentality of

5    interstate commerce or the mails in any business the principal purpose of which is the collection

6    of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or

7    due or asserted to be owed or due another.  15 U.S.C.S. § 1692a(6).  There are numerous

8    exclusions, none of which apply to the facts as allege.   The facts alleged by Hunstein are that he[2]

9    incurred a medical debt at Johns Hopkins All Children's Hospital (ACH) which assigned the

10   debt to PCMS for collection.  *See Complaint* at ¶¶ 12-13.  Hunstein alleges that PCMS decided

11   to contact Hunstein about the debt via written communication.  *Id.* at ¶14.  Hunstein attaches a

12   copy of a letter from PCMS to him as exhibit "B" to the complaint.  *Id.* at ¶19.   Taken as true,

13   Hunstein has established or has alleged enough facts to raise a reasonable expectation that

14   discovery will reveal evidence to support his claim that PCMS is a debt collector as defined by

15   the FDCPA.

16        **2.  The challenged conduct is related to debt collection**.

17        Hunstein's central claim is that PCMS communicated information about Hunstein and the

18   debt to a "mail house" in Concord California. *See Complaint* at ¶¶ 16, 21, 22, 25, 26, 28, 32 and

19   33.  In fact, no other conduct by PCMS is challenged in the complaint other than the

20   communication to the "mail house."  Hunstein alleges that the PCMS sent information about him

21   and the debt to the "mail vendor" for the purpose of the "mail vendor" to populate pre-written

_____

[2]  As a parent of presumably a minor child receiving medical treatment and care.

1    template to generate a letter, then for the "mail vendor" to print and mail the letter.  The letter

2    which is attached as exhibit "B" to the complaint, is properly considered in determining Rule

3    12(b)(6) motion to dismiss.  The letter is a "communication in connection with the collection of a

4    debt."   The phrase "communication in connection with the collection of a debt" has been

5    addressed numerous times in the Middle District of Florida as well as the Eleventh Circuit.  The

6    courts look to the language of the communication in question—specifically to statements that

7    demand payment and whether it discusses additional fees if payment is not tendered.

8    *Farquharson v. Citibank, N.A.*, 664 F. App'x 793, 801 (11th Cir. 2016)), *cert. denied*, No.

9    16-8852, 137 S. Ct. 2303, 198 L. Ed. 2d 735, 2017 U.S. LEXIS 4100, 2017 WL 1495145 (U.S.

10   June 26, 2017).  Thus  an important factor in determining  whether a communication is in

11   "connection with the collection of a debt" is whether it makes an implied or express demand for

12   payment.   *Kinlock v. Wells Fargo Bank, N.A.*, 636 F. App'x 785, 787 (11th Cir. 2016)(affirming

13   dismissal of FDCPA complaint because the complaint failed to allege that the communication

14   made a demand for payment either expressly of impliedly.)  In  *Farquharson* the Eleventh Circuit

15   affirmed the dismissal of an FDCPA complaint finding a loan modification offer was not in

16   connection with collection of any debt, since it did not demand payment or indicate that any

17   actions would be taken upon failure to make payments.   Similarly, in *France v. Ditech Fin.,*

18   *LLC*, No. 8:17-cv-3038-T-24 MAP, 2018 U.S. Dist. LEXIS 58711, at *13-14 (M.D. Fla. Apr. 6,

19   2018) where the statement of a mortgage loan servicer stated only what was required by Truth in

20   Lending Regulations[3] it was not a "communication in connection with the collection of a debt."

---

[3]  Specifically 12 C.F.R. §1026.41.

1    Where the communication contains the mini-miranda[4], and demands "full and immediate

2    payment of all amounts due," and adds that "unless you pay all amounts due and owing under the

3    Note," attorney's fees "will be added to the total amount for which collection is sought" is is

4    deemed to be in connection with the collection of a debt.  _Reese v. Ellis, Painter, Ratterree &_

5    _Adams LLP_, 678 F.3d 1211, 1217 (11th Cir. 2012); _see also_ Caceres v. McCalla Raymer, LLC,

6    755 F.3d 1299, 1302 (11th Cir. 2014)(a communication that indicates that it is being sent to

7    collect a debt, states the amount of the debt, describes how the debt may be paid, and provides

8    the address to which the payment should be sent and a phone number, is a communication in

9    connection with the collection of a debt.)

10       Hunstein's complaint which attaches the letter sent by the "mail house" at the direction of

11   PCMS qualifies as a communication in connection with the collection of a debt.  It informs

12   Hunstein that the communication is from a debt collector, and that it is an attempt to collect a

13   debt.  The letter informs Hunstein that the past due account has been placed for collection.  As a

14   result, PCMS's transmission of information about the debt and Hunstein to the "mail vendor" for

15   the purpose of the "mail vendor" generating a communication in connection with the collection

16   of a debt is conduct related to the collection of a debt.

17       **3.  The Defendant has not engaged in an act or omission prohibited by the FDCPA.**

18       No other conduct by PCMS is challenged in the complaint other than the communication

19   to the "mail house."  Hunstein makes some formulaic allegations in the complaint to relating to

20   his claims. "However, a plaintiff must furnish more than mere 'labels and conclusions' or 'a

---

[4]  The mini-miranda is the notice required by 15 U.S.C. §1692e(11).  That section requires that a debt collector includes in all communications that the communication is from a debt collector.

1   formulaic recitation of the elements of a cause of action." *FDIC v. Whitley, No.*

2   *2:12-CV-00170-WCO*, 2012 U.S. Dist. LEXIS 189483, at *1 (N.D. Ga. Dec. 10, 2012)(*quoting*

3   *Twombly*, 550 U.S. at 555).  For example, Hunstein alleges that the information provided by

4   PCMS to the "mail house" was a communication in connection with the collection of a debt

5   since it involved the disclosure of the debt "to a third-party **with the objective of being [a]**

6   **communication with and motivation of the consumer to pay the alleged debt**." *See*

7   *Complaint*, (Doc. #1) at ¶22 (emphasis added).  Hunstein conflates two communications: 1)

8   PCMS's transmission of information to the "mail house" for purposes of generating a letter to the

9   debtor; and 2) the actual letter (exhibit "B" to the complaint) which was allegedly transmitted by

10  the "mail house" to Hunstein.  It is the second communication, the actual letter that had the

11  objective of motivating Hunstein to pay the debt.  That communication is not alleged to have

12  violated the FDCPA.  PCMS asserts that the first communication from PCMS to the "mail

13  vendor" is not a "communication in connection with the collection of a debt."

14       The FDCPA defines communication as "the conveying of information regarding a debt

15  directly or indirectly to any person through any medium." 15 U.S.C.S. § 1692a(2).  No doubt that

16  the transmission of information about Hunstein and the debt from PCMS to the "mail vendor"

17  fits within this very broad definition of a communication.  However, Hunstein claims that PCMS

18  violated 15 U.S.C.S. § 1692c(b) and 15 U.S.C.S. § 1692f both of which relate to actions "in

19  connection with the collection of a debt."[5]  Section 15 U.S.C.S. § 1692c(b) of the FDCPA deals

---

[5]  The introductory phrase of 15 U.S.C.S. § 1692f provides "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  Hunstein alleges in ¶33 that PCMS violated 15 U.S.C.S. § 1692f by using an unfair means in connection with the collection of a debt.

1    with debt collectors communications with third-parties.  That section which is entitled

2    "communication with third parties" provides as follows:

3        [e]xcept as provided in section 804 [15 USCS § 1692b], without the prior consent
4        of the consumer[6] given directly to the debt collector, or the express permission of
5        a court of competent jurisdiction, or as reasonably necessary to effectuate a post-
6        judgment judicial remedy, a debt collector may not communicate, *in connection*
7        *with the collection of any debt,* with any person other than the consumer, his
8        attorney, a consumer reporting agency if otherwise permitted by law, the creditor,
9        the attorney of the creditor, or the attorney of the debt collector.

10

11   15 U.S.C. § 1692c(b) (emphasis added).  As a result, not every conveyance of information, i.e.

12   communication, is prohibited with third parties, rather only "communications in connection with

13   the collection of a consumer debt."  Hunstein alleges in a conclusory and formulaic way that the

14   transfer of the information to the "mail house" was in "connection with the collection of a debt."

15   *See Complaint*, (Doc. #1) at ¶¶22, 32.  This formulaic conclusion need not be accepted as true for

16   purposes of Rule 12(b)(6) motion to dismiss.  *Melford v. Kahane & Assocs.*, No.

17   18-cv-60881-BLOOM/Valle, 2018 U.S. Dist. LEXIS 178061, at *6 (S.D. Fla. Oct. 15,

18   2018)(quoting *Twombly*, 550 U.S. at 555; and *citing* Iqbal, 556 U.S. at 678; *Thaeter v. Palm*

19   *Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006)).

20        The communication from PCMS to the mail vendor is not attached to the complaint.

21   There is no allegation that the communication being challenged (PCMS to the "mail vendor")

22   had any indications of debt collection.  Nor would it make sense that such communication would

23   contain that information.  The complaint alleges that PCMS communicated to the "mail house"

---

[6] For purposes of section 15 U.S.C. § 1692c "consumer" includes the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator. 15 U.S.C. § 1692c(d).

1    Hunstein's status as a debtor;  the fact that he allegedly owed $2,449.23 to the creditor;

2    that the debt concerned his son's medical treatment; his son's name; and other highly personal

3    pieces of information.  *See* *Complaint*, (Doc. #1) at ¶18.  Hunstein reiterates the contents of the

4    communication between PCMS and the "mail house" again in ¶ 26 of the Complaint.  The fact

5    that the letter that PCMS would have the "mail house" generate and send would be considered a

6    "communication in connection with the collection of a debt," does not make the transfer of

7    information to the "mail house" a communication in connection with the collection of a debt.  It

8    simply makes it a communication with a third party.

9         Since the FDCPA claims alleged by Hunstein are based upon an impermissible

10   communication in connection with the collection of a debt; and the challenged communication

11   was not in connection with the collection of a debt, the complaint fails to state a claim for a

12   violation of the FDCPA.

13        PCMS has been unable to identify any authority which would support Hunstein's

14   contention that the mere transfer of information to a "mail house" is a violation of the FDCPA.

15   The use of mail houses or mail vendors which receives sensitive personal information about

16   individuals including consumer debtors covered by the FDCPA is widespread.  There are

17   numerous cases which expressly mention mail vendors being used in the context of the FDCPA,

18   none of which have found the action to be an unauthorized communication with a third party.

19   *See*  *Estate of Clements v. Apex Asset Mgmt., LLC*, Civil Action No. 18-10843 (JBS-AMD),

20   2019 U.S. Dist. LEXIS 49105, at *2 (D.N.J. Mar. 25, 2019)(debt collector's mail vendor created,

21   printed, folded, inserted the letter into a glassine-windowed envelope and mailed the collection

22   letter to the debtor); *Estate of Caruso v. Fin. Recoveries*, No. 15-7936 (JS), 2017 U.S. Dist.

1    LEXIS 96168, at *2-3 (D.N.J. June 22, 2017)(debt collector placed a validation letter for the

2    account on file to be mailed by a third-party mail vendor, which confirmed it mailed the

3    validation letter to the debtor.); _Anekova v. Van Ru Credit Corp._, 201 F. Supp. 3d 631, 632

4    (E.D. Pa. 2016)(the collection letter was printed, folded, placed in the envelope and mailed by  a

5    mail vendor hired by the debt collector); _Isaac v. RMB, Inc._, No. 2:12-cv-2030-TMP, 2014 U.S.

6    Dist. LEXIS 97543, at *3 (N.D. Ala. July 17, 2014)(debt collector sent collection-account

7    information to an outside vendor to perform a "scrub," which entails comparing the name,

8    address, telephone number, and Social Security number of the debtor (Elva Whitman or Elva

9    Washington) to several databases, looking for changes of address, a listing on the Social Security

10   Death Index, and any bankruptcy filings by the debtor. If no information is found, the vendor

11   mails a collection letter to the debtor at the address supplied by the debt collector).  None of these

12   cases considered whether the transmission of information by the debt collector to the mail house

13   was a violation of the FDCPA.

14         In addition to numerous cases discussing, without objecting to, the practice of using a

15   "mail house" the Consumer Finance Protection Bureau (CFPB) charged with enforcing the

16   FDCPA also acknowledged the practice was common place without raising any concerns or

17   objections to the practice.[7]

18         As a result, PCMS asserts that the communication to the "mail house" without more is

---

[7] _See CFPB "Study of third-party debt collection operations"_ (July 2016) at §6.1.1, page
32-33 entitled "Letter Vendors" (In response to questionnaires sent by CFPB to debt collectors,
the results showed that "[m]ost respondents used and outside vendor for sending written
communications. . . .").
https://files.consumerfinance.gov/f/documents/20160727_cfpb_Third_Party_Debt_Collection_O
perations_Study.pdf

1    not a "communication in connection with the collection of a debt,"

2        **B.  No Article III standing since Hunstein has suffered no concrete injury**

3        Assuming arguendo that the communication between PCMS and the "mail vendor" could

4    be construed as a communication in connection with the collection of a debt, the claim alleged is

5    a bare procedural violation to which Hunstein has not show a concrete harm, therefore the

6    complaint should be dismissed.

7        The "irreducible constitutional minimum" of standing consists of three elements which

8    the plaintiff, as the party invoking federal jurisdiction bears the burden of establishing.  _See_

9    _Spokeo, Inc. v. Robins_, 136 S. Ct. 1540, 1547 (2016); (_citing Lujan v. Defenders of Wildlife_, 504

10    U. S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).  The three elements of standing are

11    that the plaintiff: (1) suffered an injury in fact, (2) that is fairly traceable to the challenged

12    conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.

13    _Id._  Where, as here, a case is at the pleading stage, the plaintiff must "clearly . . . allege facts

14    demonstrating" each element.  _Warth v. Seldin_, 422 U. S. 490, 518, 95 S. Ct. 2197, 45 L. Ed. 2d

15    343 (1975).  Thus, standing requires that the plaintiff personally has suffered some actual or

16    threatened injury.  _Valley Forge Christian College v. Americans United for Separation of Church_

17    _and State, Inc._, 454 U. S. 464, 472, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982); _see also Vieczorek_

18    _v. Khorrami_, No. 3:17-cv-1118-J-32JBT, 2019 U.S. Dist. LEXIS 36681, at *6 (M.D. Fla. Mar. 7,

19    2019).  In _Spokeo_, the Court examined whether an alleged violation of the Fair Credit Reporting

20    Act was sufficient to meet the concreteness of the injury in fact requirement of standing.  The

21    Court stated that a "concrete" injury must be "de facto"; that is, it must actually exist.  _Id._ At

22    1548 (_citing Black's Law Dictionary_ 479 (9th ed. 2009)).  Thus, the usual meaning of the term

1    concrete as "real," and not "abstract" is meant.  *Id.*  The Court reasoned that though Congress

2    may identify and elevate intangible harms whenever a statute grants a person a statutory right and

3    purports to authorize that person to sue to vindicate that right, *that alone does not mean that a*

4    *plaintiff automatically satisfies the injury-in-fact requirement*. *Id.* (emphasis added).   Thus,

5    Article III standing requires a concrete injury and in the context of a statutory violation alleging a

6    procedural violation, divorced from any concrete harm, fails to satisfy the injury-in-fact

7    requirement of Article III. *Id.*   In *Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998 (11th Cir. 2016)

8    the Eleventh Circuit held that a plaintiff lacked standing to sue for violation of New York

9    mortgage law due to a "delay in recording the certificate of discharge" because he showed no

10   concrete harm caused by that statutory violation.  *Nicklaw* 839 F.3d 998, 1002  *cf* *Church v.*

11   *Accretive Health, Inc.*, 654 F. App'x 990, 994 (11th Cir. 2016) (an unpublished opinion which

12   was cited but not followed by *Nicklaw* concluding that plaintiff had standing to sue for disclosure

13   violation under the Fair Debt Collection Practices Act because "through the FDCPA, Congress

14   has created a new right—the right to receive the required disclosures in communications

15   governed by the FDCPA and a new injury—not receiving such disclosures."); *Perry v. CNN,*

16   *Inc.*, 854 F.3d 1336, 1339-40 (11th Cir. 2017)("the violation of a procedural right granted by

17   statute can be sufficient in some circumstances to constitute injury in fact" so that "a plaintiff in

18   such a case need not allege any additional harm beyond the one Congress has identified."); *Meeks*

19   *v. Ocwen Loan Servicing LLC*, 681 F. App'x 791, 793 (11th Cir. 2017) (finding that plaintiff

20   lacked standing to sue for receipt of insufficient form under Regulation X of the Real Estate

21   Settlement Practices Act because he "suffered at most 'a bare procedural violation,' and he cannot

22   show that he suffered a real, concrete injury from Ocwen's actions"); *but see*  *Duchene v. Aargon*

1    *Collection Agency, Inc.*, No. 8:17-cv-236-T-30AAS, 2017 U.S. Dist. LEXIS 84479, at *3 (M.D.

2    Fla. June 2, 2017).

3          Hunstein alleges that PCMS "intentionally chose" to disclose information about the debt

4    and personal information about Hunstein and his son to the mail house "solely to increase its

5    operational efficiency and profits." *See  Complaint*, (Doc. #1) at ¶39.  Likewise, in ¶ 35,

6    Hunstein alleges that the communication with the mail house was done for a competitive

7    advantage over other debt collectors and to gain additional profits.  *See  Complaint*, (Doc. #1) at

8    ¶35; see also ¶28.   The complaint cites *Brown v. Van Ru Credit Corp.*, 804 F.3d 740, 743 (6th

9    Cir. 2015) for the proposition that "if the debt collector conveys information regarding the debt

10   to a third party—informs the third party that the debt exists or provides information about the

11   details of the debt—then the debtor may well be harmed by the spread of this information."  *See*

12   *Complaint*, (Doc. #1) at ¶27.  By quoting *Brown*, for the proposition that the debtor "may well be

13   harmed by the spread of the information" this is the closest Hunstein comes to alleging a concrete

14   injury.   A debt collector's motive to make a profit is a valid motive for using a mail house and

15   that is what Hunstein alleges.  Hunstein fails to allege any facts that the motivation was to harm

16   his reputation, or that his reputation suffered harm as a result.   Since transmission to a mail

17   vendor without more being alleged, would be a bare procedural statutory violation, in the absence

18   of a concrete harm, there is no injury in fact alleged, and thus no Article III standing.

19          **C.  Lack of Jurisdiction over the FCCPA claim**

20          PCMS does not dispute that if the court has jurisdiction over the FDCPA claim, it has

21   supplemental jurisdiction over the FCCPA claim.  28 U.S.C. § 1367.  In the absence of a FDCPA

22   claim, Hunstein would have to bring Count II against PCMS in state court.  Based upon the

1    foregoing, PCMS requests that the court dismiss Count I for violation of the FDCPA for failure

2    to state a claim for which relief may be granted and for lack of standing, and decline to exercise

3    supplemental jurisdiction as to Count II based upon  28 U.S.C. § 1367(3). That section provides

4    that a court  may decline to exercise supplemental jurisdiction if it has dismissed all claims over

5    which it has original jurisdiction.  *See* *Butler v. BYL Collection Servs.*, LLC, No.

6    8:07-CV-00330-T-17-MAP, 2007 U.S. Dist. LEXIS 43191, at *5 (M.D. Fla. June 14,

7    2007)(declining to exercise supplemental jurisdiction after dismissal of FDCPA claim)

8    **D.  Count II fails to properly allege a claim for violation of Fla. Stat. § 559.72(5)**

9    In the event that the Court denies the motion to dismiss the FDCPA claim, or does dimiss

10   the FDCPA claim but elects to exercise supplemental jurisdiction over Cout II of the complaint;

11   PCMS asserts that Count II, the FCCPA claim, fails to state a claim for which relief may be

12   granted.

13   The only section of the FCCPA which Hunstein alleges that PCMS violated is subsection

14   559.72(5), Florida Statutes.  That subsection provides:

15   [i]n collecting consumer debts, no person shall: . . . (5) Disclose to a person other
16   than the debtor or her or his family information affecting the debtor's reputation,
17   whether or not for credit worthiness, with **knowledge or reason to know that the**
18   **other person does not have a legitimate business need for the information** or
19   that the information is false.
20
21   Fla. Stat. § 559.72(5) (2017)(emphasis added).

22   In order to establish a violation of this section the debtor must show the following

23   necessary elements necessary for a good cause of action: (1) that there was a disclosure of

24   information to a person other than a member of debtor's family, (2) that such person does not

25   have a legitimate business need for the information, and (3) that such information affected the

-15-

1    debtor's reputation. *Liste v. Cedar Fin.*, No. 8:13-cv-3001-T-30AEP, 2014 U.S. Dist. LEXIS

2    112813, at *5 (M.D. Fla. Aug. 14, 2014)(*citing Heard v. Mathis*, 344 So. 2d 651, 655 (Fla. 1st

3    DCA 1977)).  As discussed *supra*, the first element, i.e. that information was disclosed to a

4    person other than a member of Hunstein's family has been properly alleged.

5           There is no allegation that the mail vendor did not have a legitimate business need for the

6    information transmitted by PCMS.   The complaint alleges that the "mail house" was a

7    commercial mail house in Concord California.  *See  Complaint*, (Doc. #1) at ¶16.  The complaint

8    also alleges that the "mail house" then used the information to populate a pre-written template,

9    which was then printed and mailed by the mail house to Hunstein.  *See  Complaint*, (Doc. #1) at

10    ¶19.  The complaint also alleges that PCMS "intentionally chose" to disclose information about

11    the debt and personal information about Hunstein and his son to the mail house "solely to

12    increase its operational efficiency and profits." *See  Complaint*, (Doc. #1) at ¶39.  Likewise, in ¶

13    35, Hunstein alleges that the communication with the mail house was done for a competitive

14    advantage over other debt collectors and to gain additional profits.  *See  Complaint*, (Doc. #1) at

15    ¶35.  The complaint does allege there was no legitimate "need" for the information to be

16    transmitted to the "mail house" since PCMS could have prepared and mailed the letter itself

17    without disclosing the information.  There is difference between saying a business has

18    alternatives, and claiming that another more profitable is not legitimate.  As a result, the

19    complaint establishes based upon the well pleaded allegations that there was a legitimate

20    business purpose for PCMS to transmit the information to the mail vendor.

21           Finally, the complaint does not contain any allegations that the transmission of the

22    information from PCMS to the "mail house" affected Hunstein's reputation.  The complaint

1    alleges that the spread of the information may lead to harm, but there is no allegation that his

2    reputation was harmed.  As a result, the complaint has failed to state a claim under subsection §

3    559.72(5), Florida Statutes (2017).  *See Liste v. Cedar Fin.*, No. 8:13-cv-3001-T-30AEP, 2014

4    U.S. Dist. LEXIS 112813, at *5 (M.D. Fla. Aug. 14, 2014).

5          **III.  Conclusion**

6          For the foregoing reasons, Defendant, PREFERRED COLLECTION AND

7    MANAGEMENT SERVICES, INC., requests that the complaint be dismissed.

8    Dated: May 10, 2019.

9                                        By:    /s/ Robert A. Vigh
10                                              ROBERT A. VIGH
11                                             FBN: 0991902
12                                             Trial Counsel
13                                             SOLOMON, VIGH, P.A.
14                                             P.O. BOX 3275
15                                             TAMPA, FL 33601-3275
16                                             (813) 229-0115
17                                             Rvigh@sgv-law.com (primary)
18                                             Robvigh@gmail.com (secondary)
19
20                          **CERTIFICATE OF SERVICE**
21          I HEREBY CERTIFY that on May 10, 2019, I electronically filed the foregoing
22    document with the clerk of the court using CM/ECF, and that a Notice of Electronic Filing of the
23    foregoing has been generated and is being served upon all counsel of record this date.
24
25
26                                        By:    */s/ Robert A. Vigh*
27                                             ROBERT A. VIGH
28                                             FBN: 0991902
29
30
31
32
33

-17-