**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

RICHARD HUNSTEIN,

    **Plaintiff,**

v.                                          Case No: 8:19-cv-00983-EAK-TGW

PREFERRED COLLECTION AND
MANAGEMENT SERVICES, INC.,

    **Defendant.**
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS COMPLAINT**

    COMES NOW the Plaintiff, *Richard Hunstein* ("**Plaintiff**" or "**Mr. Hunstein**"), by and through his attorneys, Seraph Legal, P.A. and, pursuant to Local Rule 3.01(b), and files this response in opposition to Defendant, *Preferred Collection and Management Services, Inc.*'s ("**Preferred**" or "**Defendant**") Motion to Dismiss.

**INTRODUCTION AND PROCEDURAL HISTORY**

    1.    Mr. Hunstein filed his Complaint in the United States District Court for the Middle District of Florida, on April 24, 2019, for violations of the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et. seq.* ("**FDCPA**"), and the *Florida Consumer Collection Practices Act,* Florida Statute §559.55 et seq. ("**FCCPA**"). *D.E. 1*.

    2.    Defendant filed its Motion to Dismiss on May 10, 2019. *D.E. 6*.

    3.    For reasons unknown to the Plaintiff, Defendant included a co-defendant, Equifax Information Service, LLC, in the case caption for its Motion to Dismiss. At no

point has this entity been included in this case and Plaintiff will not address Equifax in this Response.

## STANDARD OF REVIEW

On motion to dismiss, the court must accept as true all well-pled facts in a plaintiff's complaint. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009). The complaint may only be dismissed if the facts, as pled, do not state a claim for relief that is plausible on its face. *Id*. The well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 5709 (2007).

Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555. A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In weighing the complaint, all facts must be taken in a light most favorable to the plaintiff. *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007); *Nelson v. Campbell*, 541 U.S. 637, (2004) (where a court is considering dismissal of a complaint at the pleading stage, it must assume the allegations of the complaint are true); *Washington v. Albright*, 2011 U.S. Dist. LEXIS 113131, *3-4 (M.D. Ala. Sept. 30, 2011).

When reviewing a motion to dismiss, a court must limit its consideration to the pleadings and exhibits attached to the pleadings and, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts

in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). *See also Wilchombe v. TeeVee Toons, Inc.,* 555 F.3d 949, 959 (11th Cir. 2009) ("A court's review on a motion to dismiss is limited to the four corners of the complaint"). "The plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Miyahira v. Vitacost.com, Inc.,* 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955).

## Legal Argument and Memorandum of Law

**I.     Plaintiff's Complaint Sufficiently States Claim under the FDCPA, 15 U.S.C. § 1692c(b)**

In its motion, the Defendant does not dispute that the Plaintiff has correctly alleged the first two elements of his claim under the FDCPA – that Defendant is a debt collector and that the conduct complained of relates the collection of a consumer debt. *D.E. 6* at 4-5. The Defendant's motion claims the conduct alleged is somehow not prohibited by the FDCPA.

On page 7 of its motion, the Defendant admits that the Complaint includes a letter sent at the direction of Preferred, through a third-party mail house located in another state, to Mr. Hunstein in order to collect a debt (lines 10-16). The FDCPA defines communication as "the ***conveying of information regarding a debt*** directly or indirectly to any person through any medium." 15 U.S.C.S. § 1692a(2). ***Emphasis Added.*** The Defendant then goes on to state, on page 8, that there is "(n)o doubt that the transmission of information about Hunstein and the debt from PCMS to the 'mail vendor' fits within this very broad definition of a communication" (lines 15- 17).

Then, peculiarly, on page 9, the Defendant attempts to argue that the Plaintiff needed to attach a copy of the communication from Preferred to the mail house in order to state claim. (line 20).  This, as is clear from the standard of review included in the ***Defendant's own motion***, is a red herring.  At this early stage of the pleadings, when the Defendant has not yet submitted even a formal answer to the complaint, the Plaintiff is neither required to have all possible documentation affecting the outcome of the case in his possession, nor to present such to the Court.  It is unreasonable to require that Mr. Hunstein be in possession of internal communications between Preferred and CompuMail in Concord, California; rather, the existence of such communications can be conclusively inferred from the fact a collection letter containing highly personal and specific medical information was mailed bearing Preferred's name and CompuMail's return address.  The Plaintiff must only allege adequate facts, which if taken as true, state a claim under the cited cause of action. The Plaintiff has specifically and sufficiently alleged these facts in his complaint, *D.E. 1, Page 3, Paragraphs 16-19.*

As the Defendant goes on to admit in its own motion, Plaintiff has stated a viable claim under the FDCPA. On page 9, line 23 to page 10, lines 1 – 3 of its motion, the Defendant states:

> **"The complaint alleges that PCMS communicated to the "mail house" Hunstein's status as a debtor; the fact that he allegedly owed $2,449.23 to the creditor; that the debt concerned his son's medical treatment; his son's name; and other highly personal pieces of information. See Complaint, (Doc. #1) at ¶18."**

Information about the Plaintiff, his son, and the purported debt were all communicated by Defendant to CompuMail, the mail house, in order for CompuMail to generate the letter attached as Complaint Exhibit B; as the Defendant acknowledges in its motion, it directed CompuMail to send the letter and it was in connection with the collection of a debt.

The Defendant then argues that transmitting the sensitive information alleged in the Complaint to a third-party mail house is acceptable because other cases litigated under the FDCPA have tangentially involved third-party mail houses printing and mailing letters. However, <u>none</u> of these cases cited by the Defendant involved a consumer alleging a violation of **15 U.S.C. §1692c(b),** as Mr. Hunstein does in the instant matter.  Each and every case Defendant cites deals with a different section of the FDCPA, and unsurprisingly, a very different material facts.  For example, Defendant cites *Estate of Clements v. Apex Asset Mgmt., LLC*, Civil Action No. 18-0843 (JBS-AMD) (D.N.J. Mar. 25, 2019) despite the fact that this case involved only an alleged violation of 15 U.S.C. §1692f(8), and centered on an account number being visible on outside of the envelope mailed to consumer.  Remarkably, Defendant seems to imply that, because the court failed to *sua sponte* adjudicate an issue which was not plead by the consumer, (third-party disclosure), such failure amounts to endorsement of the practice and its acceptability under the FDCPA.

Likewise, *Caruso v. Fin. Recoveries*, Civil No. 15-7936 (JS) (D.N.J. Jun. 22, 2017) also dealt with a third-party mail house, but addressed issues concerning an account number being visible on the outside of an envelope mailed to a consumer in violation of 15 U.S.C. §1692f(8); the case also addresses additional issues about the letter itself not

conforming to the disclosure requirements of 15 U.S.C. §1692g(3-5). In a similar fashion, *Anenkova v. Van Ru Credit Corp.*, 201 F. Supp. 3d 631 (E.D. Pa. 2016) addressed 15 U.S.C. §1692f(8) only and focused on an account number being visible on the outside of an envelope mailed to the consumer. *Isaac v. RMB, Inc.*, Case No. 2:12-cv-2030-TMP (N.D. Ala. Mar. 26, 2014) concerned issues regarding 15 U.S.C. § 1692c(c), 15 U.S.C. § 1692d(5), 15 U.S.C. § 1692d(6), 15 U.S.C. § 1692e(11).

Defendant would appear to be making a "but everyone else is doing it!" argument – an argument generally reserved for one's parents during childhood. The fact that not all courts agree that the mail house printing an account number, visible on the outside of a mailed envelope, violates the subsection **f(8)** cannot be stretched so far as to suggest that the communication of information to the mail house in connection with the collection of a debt by a debt collector is permissible under subsection **c(b)**. The issues are entirely distinct because the involve entirely different types of conduct.

Not a single case cited within Defendant's Motion to Dismiss addresses the facts, argument, and statute upon which Mr. Hunstien's claim is based: that the sensitive consumer information Preferred communicated to a third-party mail house for the sole purpose of relaying that information to the consumer as an attempt to collect a debt is a violation of the express prohibition found in **15 U.S.C. §1692c(b).** This Court knows a court will not rule on a cause of action that has not been raised by the plaintiff. The Defendant provides no caselaw involving a compliant under the statute applicable to this case.

The Defendant then complains that it has been unable to find authority justifying Mr. Hunstein's exact position. As an initial point, the plain language of the Act itself makes clear a debt collector cannot "communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." 15 U.S.C. §1692c(b). The long-standing principle of *expressio unius est exclusio alterius* precisely fits this situation. Congress listed several specific exemptions to this broad rule, *e.g.,* a debt collector can communicate information about a debt to a credit reporting agency, the consumer, and the creditor. Had Congress intended to include third-party, out-of-state mail houses, it could have added such entities to its list. This deference to Congress by focusing on the simple meaning of the statutory language is the approach taken by the Supreme Court of the United States in recent decisions involving the FDCPA. *Henson v. Santander Consumer USA Inc*., 137 S. Ct. 1718 (2017), *Obduskey v. McCarthy & Holthus LLP*, No. 17-1307 (U.S. Mar. 20, 2019)

Additionally, the 11th Circuit has confirmed that even "indirect" communications fall within the purview of **15 U.S.C. §1692c**. *See Bishop v. Ross Earle & Bonan, P.A*., 817 F.3d 1268 (11th Cir. 2016) (establishing that communication under the FDCPA is either "direct" or "indirect", and even indirect communications to a consumer's attorney are actionable based on the language of 15 U.S.C. §1692c within the broad statutory context).

With respect to the very clear and simple language of **15 U.S.C. §1692c(b),** which states, as aforementioned, "a debt collector may not communicate, in connection with the collection of any debt, with **any person other** than the **consumer**, his **attorney**, a

**consumer reporting agency** if otherwise permitted by law, the **creditor**, the **attorney of the creditor**, or the **attorney of the debt collector**." (Emphasis added). The Defendant's actions, in which it communicated in connection with the collection of a debt to a third-party mail-house, clearly fall within the purview of this statutory prohibition.

The Defendant erroneously cites an 11th Circuit case, *Farquharson v. Citibank, N.A.*, No. 15-14766, at *14 (11th Cir. 2016). The unpublished opinion centers around Bank of America and Citibank sending a letter offering a mortgage modification. In *Farquharson*, the questions the court addressed were whether the content of the letter constituted an attempt to collect a debt, since it was not sufficiently worded actually demand payment. The Defendants in *Farquharson* claimed the communication was only offering an opportunity to modify the terms of the consumer's loan, and not a *per se* attempt to collect any debt. This stands in stark relief to the letter sent to Mr. Hunstein by the Defendant which was headlined, "COLLECTION NOTICE", and stated, amongst other things, "(i)f paid in full to this office, all collection activity will be stopped." The animating purpose of Defendant's letter and its communication to the mail house was to obtain payment from Mr. Hunstein and/or to encourage him to contact Defendant so that it might work with him to reach a payment agreement.

Again, Defendant seems to imply that because one court found a mortgage modification offer to not be a communication in connection with the collection of a debt due to its specific wording, any letter sent by any third party mail house is not made in connection with the collection of a debt. Defendant's logic stretches beyond the point of breaking. Mr. Hunstein's complaint clearly pleads that the debt collection letter sent to

him required the transmittal of protected information about the debt by Defendant to the third-party mail-house.  The sole purpose of the Defendant's communication to the mail house was to facilitate a written communication which would contain Defendant's demand for payment from the consumer.  Therefore, the Defendant's communication of information regarding the debt goes beyond merely being "in connection" with the collection of the debt.  Defendant's third-party disclosure has a direct, intentional, and causal connection with the debt collection attempt attached as Complaint Exhibit B.

This "two-step" collection process is analogous to another form of communication in connection with the collection of a debt which has been, unquestionably, subject to the FDCPA for decades. Countless debt collectors, just like Preferred, furnish collection account data to nationwide **Credit Reporting Agencies** ("**CRAs**") in an attempt to obtain payment from the consumer via credit reporting.  When making reports to a CRA, a debt collector, like Preferred, communicates information about a debt, *e.g.,* the balance, original creditor, and the consumer's name and address, to a third party.  The CRA then reformats that data and incorporates it into the consumer's credit report, which the consumer is likely to see when he or she checks their credit report.  Courts have long held that such communications to a credit reporting agency are communications in connection with the collection of a debt and are subject to the FDCPA.  "Debt collectors use the reporting mechanism as a tool to persuade consumers to pay, just like dunning letters and telephone calls." *Quale v. Unifund CCR Partners*, 682 F. Supp. 2d 1274, 1278 (S.D. Ala. 2010); *Rivera v. Bank One,* 145 F.R.D. 614, 623 (D.P.R. 1993) ("[Credit reporting] is a powerful tool designed, in part, to wrench compliance with payment terms…").

Communicating information to a CRA or to a mail house involves the disclosure of essentially the same information regarding a debt. Preferred, a debt collector, communicated data about the debt, such as the face the balance alleged was $2,449.23, the consumer's identity, and address. Indeed, the Defendant's communication contained *even more* data than would typically be included in a report to a CRA, *e.g.* the Plaintiff's minor son's name, and details of his medical treatment. CompuMail received this information and then utilized this information to create a collection letter and mail it to Mr. Hunstein – a communication in connection with the collection of a debt.

There is, however, one significant difference between disclosure to a CRA and disclosure to CompuMail, as revealed by an even cursory reading of the applicable statute, **15 U.S.C. §1692c(b).** Communications to CRAs are listed as exempt.

## II.     Plaintiff meets Article III requirement for standing

The Defendant attempts to argue that disclosing Mr. Hunstein's name, the name of his minor son, facts about his minor son's medical treatment, and that he may owe $2,449.23, to an unauthorized third-party is not "concrete" enough to give Mr. Hunstein standing under the FDCPA. Looking to recent decisions by this very Court, it is apparent that the Defendant's attempt to belittle the harm of its violations is unconvincing. Judge Moody very clearly analyzed this exact same issue in *McCamis v. Servis One, Inc.*, CASE NO: 8:16-CV-1130-T-30AEP (M.D. Fla. Jul. 29, 2016), noting that:

> "Here, Plaintiff alleges a concrete and particularized injury in fact: Plaintiff has statutorily-created rights to be free from a debt collector's inappropriate attempts

> to collect a debt that he is no longer responsible for; to be free from being contacted from a debt collector who knows he is represented; and to be free from being subjected to false, deceptive, unfair, or unconscionable means to collect a debt."
>
> *Id* at 3 and 4.

In lock-step with this logical analysis, Mr. Hunstein has a clear statutorily-created right under 15 U.S.C. §1692c(b) to be free from having a debt collector like the Defendant communicate with unauthorized third-parties in connection with its attempt to collect the debt. As a direct result of Preferred's conduct, an unknown number of people, not expressly exempt by the statute, have learned that Mr. Hunstein's son had certain medical treatments, which entity provided those treatments, how much they cost, and that Mr. Hunstein, allegedly, never paid those costs. These third-parties have neither a right to know this information nor any need for such information as Preferred could have avoided such disclosure by handling its own mailing.

The 11th Circuit Court of Appeals has also issued ruling which support the notion that Mr. Hunstien has alleged facts sufficient to meet the requirement of a concrete and particularized injury; see, e.g., *Church v. Accretive Health, Inc.*, No. 15-15708, at *10 (11th Cir. 2016) ("While this injury may not have resulted in tangible economic or physical harm that courts often expect, the Supreme Court has made clear an injury need not be tangible to be concrete. See *Spokeo, Inc*., 578 U.S. at ___, 136 S. Ct. at 1549; *Havens Realty Corp*., 455 U.S. at 373. Rather, this injury is one that Congress has elevated to the status of a legally cognizable injury through the FDCPA. Accordingly, Church has sufficiently alleged that she suffered a concrete injury, and thus, satisfies the injury-in-fact requirement.").

The Defendant then cites a 11th Circuit decision where the appellate court acknowledged that an impermissible disclosure under the Video Privacy Protection Act did give a particularized injury sufficient to convey standing, *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1341 (11th Cir. 2017). This case would support, rather than undermine, Plaintiff's claims, as the court stated "we hold that a plaintiff such as Perry has satisfied the concreteness requirement of Article III standing, where the plaintiff alleges a violation of the VPPA for a wrongful disclosure. Had the Defendant continued to read the holding in *Perry*, it may have realized that the case was dismissed because the plaintiff was not a "subscriber" as was required to bring a claim under the VPPA, not because of an Article III issue.

With this binding legal precedent as context, it becomes clear that the Defendant's standing argument has no legs to stand on.

Still, undeterred by binding case law within this jurisdiction, Defendant attempts to heighten Mr. Hunstein's pleading requirements by asserting that he failed "to allege any facts that the motivation was to harm his reputation, or that his reputation suffered harm as a result." (D.E. 6, Page 14, lines 15-16). This argument discards the well-settled precedent that malice, or even negligence, is not required to state claim under the FDCPA - *a strict-liability statute*. "The FDCPA typically subjects debt collectors to liability even when violations are not knowing or intentional." *Owen v. I.C. System*, 629 F.3d 1263, 1270 (11th Cir. 2011), *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. 2010). *Mens rea* is not a required element. Preferred's motivations for engaging in the unauthorized third-party communications, which are expressly prohibited by **15 U.S.C. §1692c(b)**, are utterly

irrelevant to basic issue of liability in this case, though they may be relevant to a question of punitive damages.

### III.     Plaintiff FCCPA claim must not be dismissed due to its relation to the FDCPA

The Plaintiff's FCCPA claim must be allowed to continue as well. The 11th Circuit has held that the two laws are very much intertwined, and "(t)he FCCPA unequivocally states its goal — to provide the consumer with the most protection possible under either the state or federal statute" *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010). The *LeBlanc* Court acknowledged the language of Florida Statute § 559.552, which states:

> This part is in addition to the requirements and regulations of the federal act. In the event of any inconsistency between any provision of this part and any provision of the federal act, the provision which is more protective of the consumer or debtor shall prevail.

Other courts have acknowledged the interplay between these two complementary statutes as well. *See Martin v. Butler & Hosch, P.A.,* Case No. 8:14-cv-640-T-24 TBM (M.D. Fla. Jul. 18, 2014) and also *Narvaez v. Specialized Loan Servicing, LLC*, Case No. 8:15-cv-19-T-24 TBM (M.D. Fla. Apr. 20, 2015) (both cases denying Defendant's motion to dismiss FCCPA claim under Florida Statute 559.72(9), which was predicated upon alleged violation of disclosure requirements 15 U.S.C. 1692g(a)).

Similarly, Mr. Hunstein's FCCPA claim is predicated upon the alleged violation of the FDCPA. The FCCPA claim arises from Florida Statute 559.72(5), which forbids any person to:

> Disclose to a person other than the debtor or her or his family information affecting the debtor's reputation, whether or not for credit worthiness, with knowledge or reason to know

> that the other person **does not have a legitimate business need** for the information or that the information is false. **Emphasis added.**

The critical term in this matter is the word "legitimate." Since it is not otherwise defined in the FCCPA, we must turn to the plain and commonly used definition of this word. In *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017), the Court turned to the Oxford English Dictionary's definition of the word "obtain" as part of its analysis as to whether the defendant, Santander, fell within the FDCPA definition of a debt collector. Adopting a similar approach, we see that Oxford English Dictionary's definition of "legitimate" is adjective for something "conforming to the law or to rules."

Based on this definition and the purpose of the FCCPA to provide additional protection to consumers contacted by debt collectors (or original creditors) in Florida, the Defendant's motion to dismiss this claim must be denied. If communication to the mail house is a violation under the FDCPA, 15 U.S.C. § 1692c(b), and therefore unlawful, the communication could not be "legitimate" as required under Florida Statute 559.72(5).

## CONCLUSION

The FDCPA prohibition against third-party communications is founded in the principle that while creditors are entitled to make reasonable efforts to collect their justly owed accounts, debtors are entitled to a level of dignity and respect that prohibits the publication of information to third-parties. Congress provided reasonable avenues of communication to balance these interests, providing debt collectors with the opportunity to report debts to credit reporting agencies and to communicate with debtors and their lawyers. Congress specifically did not include third-party mail houses and courts have

repeatedly found that any disclosure to third-parties, outside the prescribed limits, violates a consumer's rights.  Further, there is no need for such disclosures as the debt collector can easily mail out its own letters, avoiding the release of highly personal information to "outsiders."

Based on the foregoing case law, facts, and legal standards, the Plaintiff respectfully requests that the Defendants' Motion to Dismiss Plaintiff's Complaint be **DENIED**. In the alternative, the Plaintiff requests this Court to grant him leave to amend his Complaint within thirty (30) days, so as to remedy any pleading issues the Court may deem necessary to fix before allowing the litigation to proceed forward on the merits.

Respectfully submitted, May 31, 2019, by:

/*s/ Thomas M. Bonan*
Thomas M. Bonan, Esq.
Florida Bar No. 118103
Seraph Legal, P.A.
2002 East 5th Avenue, Suite 104
Tampa, Florida 33605
Phone: 813-321-2347
Fax: (855) 500-0705
Tbonan@seraphlegal.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **May 31, 2019**, a copy of the foregoing was filed electronically with the Clerk of Court via the ECF/CM filing system.  A true and correct copy of the foregoing was sent via electronic notice system or email to Defendants' counsel of record.